**UTILITIES, INC., Appellant,**

**v.**

**BLUE MOUNTAIN LAKE ASSO-CIATES, L.P.; Blue Mountain Lake Utilities Association.**

No. 04–1617.

United States Court of Appeals, Third Circuit.

Argued Jan. 26, 2005.

Decided Feb. 10, 2005.

948

David E. Lehman (Argued), Charles T. Young, Jr., McNees, Wallace & Nurick, Harrisburg, PA, for Appellant.

Patrick J. Egan (Argued), Philadelphia, PA, for Appellee.

Before SCIRICA, Chief Judge, RENDELL and FISHER, Circuit Judges.

## OPINION OF THE COURT

FISHER, Circuit Judge.

Appellant Utilities, Inc. brought the underlying action seeking specific performance of its agreement to purchase a water and sewage treatment facility from Appellees Blue Mountain Lake Associates, L.P. (the "Partnership") and Blue Mountain Lake Utilities Association (the "Association") (together "Appellees"). Appellees counterclaimed, seeking rescission of the agreement based on Utilities' alleged material breach. The District Court denied Utilities' request for specific performance and granted Appellees' claim for rescission. We will affirm.

On October 27, 2000, Utilities and the Partnership entered into an asset purchase agreement (the "Agreement") to buy and sell a water and sewer treatment facility serving the Blue Mountain Lake residential development in Monroe County, Pennsylvania (the "Facilities"). More than a year after the execution of the Agreement, Utilities and the Partnership had still not closed on the transaction. The Partnership, concluding that the deal with Utilities would not close, entered into an agreement to sell the Facilities to Pennsylvania American Water Company ("PAWC").

On February 5, 2002, Utilities brought the instant action against the Appellees seeking specific performance of the Agreement. The Partnership counterclaimed that it was entitled to rescission because Utilities had materially breached the Agreement by, among other things, refusing to purchase accounts receivable relating to the Facilities as required under the Agreement. After a bench trial, the District Court issued a memorandum and order entering judgment in Appellees' favor on Utilities' specific performance claims, and further found that Appellees were entitled to rescission because Utilities had materially breached the Agreement.

The District Court properly exercised subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's findings of fact following a bench trial under the clearly erroneous standard. *See Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir.1991) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir.1981)). "We exercise plenary review to determine whether there is an adequate remedy at law." *Sheet Metal Workers' Int'l Ass'n Local 19 v. Herre Bros., Inc.*, 201 F.3d 231, 249 (3d Cir.1999) (citation omitted).

■ "Specific performance should only be granted where the facts clearly establish the plaintiff's right thereto, where no adequate remedy at law exists, and where justice requires it." *Clark v. Pennsylvania State Police*, 496 Pa. 310, 436 A.2d 1383, 1385 (1981) (citations omitted). "An

action for damages is an inadequate remedy when there is no method by which the amount of damages can be accurately computed or ascertained." *Id.* at 1385 (citations omitted). "Damages cannot be accurately ascertained 'where the subject matter of an agreement is an asset that is unique or one such that its equivalent cannot be purchased on the open market.'" *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 160 (3d Cir.1999) (quoting *Tomb v. Lavalle*, 298 Pa.Super. 75, 444 A.2d 666, 668 (1981)) (footnote omitted).

Parties seeking specific performance bear the burden of showing their entitlement to it, and Utilities has failed to carry that burden here. Utilities offered testimony that purchasing the Facilities was important to making its presence in the region economically viable, but it failed to adduce evidence showing that the Facilities themselves—as opposed to similar facilities in other parts of Pennsylvania or, for that matter, in another state entirely— were uniquely capable of satisfying that objective. Utilities further suggests that the fact that the Facilities were a "rotating biological contactors plant" made them unique, but it never offers anything more specific as to why such a system was meaningfully unique as compared to so-called "extended air plants" or more traditional water-sewer facilities.

Utilities also failed to demonstrate that monetary damages would be inadequate due to incalculability. Not only was there a contractual purchase price placed on the Facilities, but the District Court also could have referred to the higher price at which the Partnership sold the Facilities to PAWC as a measure of damages. More-over, there was unrebutted evidence that the potential number of ratepayers that would and could be serviced by the Facilities was finite, thus further enabling a calculation of monetary damages. Accordingly, we find that the District Court did not err in refusing to grant Utilities the remedy of specific performance.

The District Court went on to conclude that Utilities had materially breached the Agreement, thus entitling Appellees to rescission.[1] This presents a slightly closer question on appeal, but our narrow standard of review of the District Court's Fed. R.Civ.P. 52(a) bench trial conclusions ultimately compels us to affirm on this issue. The District Court found that Utilities materially breached the Agreement by, in combination, refusing to purchase accounts receivable as required by the Agreement, causing lengthy delay in the closing on the transaction, and refusing to purchase certain personal property attendant to the Facilities for consideration additional to the purchase price. The conduct allegedly causing the delay included Utilities' failure timely to make a required escrow deposit and its failure timely to secure PUC approval of the transaction.

■ The Agreement provided that Utilities would purchase certain accounts receivable "transferred" to it by the Partnership. During the closing negotiations in late 2001, Utilities made clear that it would not purchase accounts receivable. Utilities argues on appeal that it was not obligated to purchase the accounts receivable because those accounts belonged to the Association, not the Partnership, and Utilities had not agreed to purchase accounts from

---

1. In addition to specific performance, Utilities sought indemnification under the Agreement due to the Partnership's alleged breach of various of its representations in the Agreement. The District Court did not consider the merits of this claim because its finding of material breach and rescission precluded Utilities from recovering on the Agreement. Because we will affirm the District Court's material breach / rescission conclusion, we also need not consider the merits of Utilities' indemnification claim.

the Association. We disagree. One need not have title to property in order to "transfer" or effect the change of possession of that property from one person or entity to another. The Partnership appeared to have full authority to effect the transfer of the accounts receivable from the Association and Utilities adduces no evidence to the contrary.

■ As noted, however, the District Court did not find that Utilities' breach of the Agreement's accounts receivable provision alone constituted a material breach. It also found that Utilities' conduct in delaying the closing on the transaction and refusing to purchase personal property relating to the Facilities contributed to the materiality of the breach. The District Court's findings regarding delay are not particularly compelling as it seemingly glosses over its finding that the Partnership was responsible for at least part of the delay by failing to provide the documents necessary to complete the closing.

But the issue of whether a breach is material is generally a factual one, *Forest City Grant Liberty Assocs. v. Genro II, Inc.*, 438 Pa.Super. 553, 652 A.2d 948, 951 (1995), and because we review the District Court's findings pursuant to Rule 52(a), our review is limited. Despite the less-than-compelling nature of some of the District Court's findings concerning delay and the purchase of personal property, other findings supporting the court's material breach conclusion are free from error— Utilities breached the Agreement by refusing to purchase the accounts receivable, Utilities was tardy in making the required escrow deposit, and Utilities played at least some role in causing delay in closing the deal. Under our clearly erroneous standard of review, and on the strength of these findings, we will not disturb the District Court's finding of material breach,

and will affirm the District Court's judgment in Appellees' favor.